UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THERESA SANDERS,

Plaintiff,

v.

5:17-CV-1027 (DNH/ATB)

NATALIE SETTY, et al.,

Defendants.

THERESA SANDERS, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

The Clerk has sent to the court for review a civil rights complaint, filed by plaintiff Theresa Sanders. (Dkt. No. 1). Plaintiff has paid the filing fee in this action. In this diversity action, plaintiff claims that from July 2010 until November 2013, she rented a home in Westerville, Ohio. (Complaint ("Compl.") ¶ 22). Currently, plaintiff lives in New York State in the Northern District of New York.

## I. Complaint

While she was living in Ohio, plaintiff paid her first and last month's rent to defendant Babbitt, who worked for a real estate company in Ohio. (Compl. ¶ 23). Plaintiff states that in December of 2015, she opened bank accounts for her child support payments at defendants Key Bank and Huntington National Bank, using her New York State driver's license as identification. (Compl. ¶ 24). Plaintiff claims that she received "Eppi Card payments at her New York State address for child support payments on or about December 2015." (Compl. ¶ 25).

Plaintiff states that in August of 2013, she was arrested in Ohio and transported to Onondaga County, New York. (Compl. ¶ 26). At the time of plaintiff's arrest, plaintiff claims that the police prevented her from taking her purse with her, which contained her car keys and her bank cards. (Compl. ¶ 27). Plaintiff claims that defendants Natalie Setty and/or Tristan Setty took possession of plaintiff's purse and car keys. (Compl. ¶ 28). Plaintiff states that either Natalie or Tristan Setty told police in Columbus, Ohio that "on or about" April of 2014, they mailed plaintiff's purse and car keys to her "Power of Attorney" in New York State, but plaintiff's Power of Attorney never received these items from either of the Setty defendants. (Compl. ¶¶ 29-30).

Plaintiff alleges that in October of 2013, she contacted the Columbus, Ohio Police Department and defendants Columbus Real Estate Pros; GCB Properties III, Ltd., Real Estate Pros, Santander, USA, Huntington National Bank, Eppi Card, Inc, Key Bank, Pekin Insurance, and the Settys to "report" concern for the whereabouts of plaintiff's "property." (Compl. ¶ 31). Plaintiff states that she had to contact these parties by "ordinary mail" because she was being held in a "holding facility" in Onondaga County, pending the posting of a bond. (Compl. ¶ 32). Plaintiff states that she never received a response to her inquires, and she was unable to post bond because of "all of the missing property and the refusal of Defendants to return said property." (Compl. ¶¶ 32, 33).

Plaintiff states that she wrote another series of letters to the above defendants in February of 2014, and that defendant Pekin Insurance was the only defendant that

responded. (Compl. ¶ 36). Plaintiff states that in March of 2014, Pekin Insurance began an investigation of her lost property claim. (Compl. ¶ 37). Pekin Insurance required plaintiff to produce proof of "ownership," which she supplied in May of 2014, but Pekin never questioned any of plaintiff's neighbors in Ohio as to the whereabouts of her property. (Compl. ¶ 38). Plaintiff claims that defendant Pekin required "depositions" of "interested parties," but those depositions were not "ordered or conducted" until "between November 2014 and February 2015." (Compl. ¶¶ 39-40).

Plaintiff claims that Pekin Insurance denied her claim as untimely, even though plaintiff's first correspondence with Pekin was in October 2013. (Compl. ¶ 42). In May of 2014, defendant Key Bank "denied any knowledge of a savings account," but the "bank" did not review any of the ATM cameras that could have shown a "wrongful taking." (Compl. ¶ 43). In June of 2014, defendant Huntington Bank denied plaintiff's claim, stating that "any money withdrawn was not wrongful conduct [sic]." (Compl. ¶ 44). However, plaintiff states that defendant Huntington Bank did not review any ATM cameras that could have shown a "wrongful taking." (*Id.*) Defendant Eppi Card, Inc. did not respond to plaintiff's correspondence until December of 2015. (Compl. ¶ 45). Plaintiff requested "all Defendant Banks" to return "all converted funds." (Compl. ¶ 46).

Plaintiff states that defendant Tristan Setty worked at defendant Informatica[1] and had a high security clearance through the company. (Compl. ¶¶ 47-48). Plaintiff believes that this security clearance allows defendant Tristan Setty "access to agencies

[1] Informatica appears to be a software development company, headquartered in California.

including the IRS and Air Force." (Compl. ¶ 48). Plaintiff claims that Tristan Setty's high security clearance and employment allowed him to "complete his conversion of Plaintiff's property with a high degree of credibility," and the neighbors did not question the taking of plaintiff's property, "which was accomplished during normal work hours." (Compl. ¶ 51). Plaintiff believes that Tristan Setty took plaintiff's property, and that she did not become aware of this until "civil depositions" were conducted between November 2014 and February 2015. (Compl. ¶ 53).

Plaintiff claims that at depositions held in February 2015, defendant Brett Stone of Columbus Real Estate, "fraudulently and perjuriously" told defendant Pekin Insurance that plaintiff had stopped making rent payments in July of 2013. (Compl. ¶ 54). Plaintiff states that she paid rent in August of 2013 and told defendant Stone that her last month's rent payment and her security deposit should be applied to the September and October rent payments. (Compl. ¶ 55). Plaintiff claims that defendant Stone also told Pekin Insurance that due to plaintiff's failure to pay rent after July of 2013, he concluded that she had abandoned the premises, that she was the only person on the lease, and that she had the only key. (Compl. ¶¶ 56-57). Plaintiff claims that defendant Stone never began any eviction proceedings, but claimed to have mailed plaintiff a "Notice of Abandonment" in September of 2013. (Compl. ¶ 58). However, plaintiff never received this notice. (*Id.*)

Plaintiff alleges that defendant Stone admitted that he let people come and go from plaintiff's address in Ohio, and that she still had property inside. (Compl. ¶ 59). In addition, an agent of defendant Towne Property testified that defendant Stone asked

to have plaintiff's car removed from the property. (Compl. ¶ 60). Plaintiff states that she has requested that the contents of her automobile be returned to her, but that Towne Property has not responded to her requests. (Compl. ¶ 60). Plaintiff alleges that the removal of the automobile from her driveway while she still "had a tenancy interest" in the property was "wrongful." (Compl. ¶ 61). Plaintiff claims that the wrongful removal of the automobile caused a "repossession" because the car's wherabouts were not known from August 2013 until May of 2014. Plaintiff had over $20,000.00 in equity in the car. (Compl. ¶ 61).

Plaintiff states that she never intended to abandon her home in Ohio, and she was the "victim of conversion and fraud forcing rent payments to stop after October 31, 2013." (Compl. ¶ 62). Plaintiff claims that defendants Natalie and Tristan Setty claimed at their deposition that they had no knowledge of the whereabouts of plaintiff's property, however, they "posted photographs" of the property in December of 2015, and have refused to return any of the property. (Compl. ¶ 63). Plaintiff claims that, at their depositions, defendants Natalie and Tristan Setty acknowledged that they did remove some money from plaintiff's account. (Compl. ¶ 64). Plaintiff states that any money that the defendants removed would have been without authorization and claims that the defendants must have found plaintiff's PIN number "by rifling though Plaintiff's possessions without authorization." (*Id.*)

Plaintiff alleges that in May of 2014, defendant Santander USA claimed no knowledge of the whereabouts of plaintiff's automobile or its contents. (Compl. ¶ 65). Plaintiff states that she has asked for the return of her property "with no

acknowledgement." (*Id.*) Plaintiff states that defendant Santander USA did not acknowledge the whereabouts of plaintiff's automobile until she reported it stolen in May of 2014. (Compl. ¶ 68). Plaintiff alleges that at the time of her arrest in August of 2013, she and her husband were pursuing divorce proceedings in Columbus, Ohio, and that plaintiff's husband was represented by defendant Attorney Suzanne Sabol, Esq. (Compl. ¶ 67). In June of 2013, defendant Sabol advised plaintiff that her husband was willing to settle the divorce action in order to avoid trial and retroactive payments of spousal and child support payments. (Compl. ¶ 68). However, defendant Sabol knew at the time of the offer that her client had no intention of "completing the divorce settlement." (Compl. ¶ 69). Plaintiff alleges that defendant Sabol knew that plaintiff was going to be indicted in August of 2013, and had received confirmation the same day that the indictment was returned. (Compl. ¶ 70).

Plaintiff alleges that defendant Sabol's statements were knowingly false, involving a high degree of dishonesty, fraud, and misrepresentation. (Compl. ¶ 71). Plaintiff alleges that all the defendants' conduct was intentional and malicious because they were aware that plaintiff was incarcerated and awaiting the opportunity to post bond. Plaintiff claims that defendant's actions prevented her from doing so. (Compl. ¶ 72). The last paragraph of the plaintiff's statement of facts asserts that plaintiff moved to Westerville, Ohio with her infant children in June of 2010 and left personal property in storage under the care and custody of defendant Daniel Ellis.[2] The property

[2] The complaint states that Daniel Ellis is from North Carolina, and it is unclear who this defendant is or when plaintiff "left" property with him. However, plaintiff never states that she or her property were in North Carolina.

consisted of "priceless heirlooms and other personal property." (Compl. ¶ 73).

Plaintiff's "Causes of Action" are for replevin, conversion, fraud, fraudulent inducement, breach of contract, breach of the obligation to deal honestly and fairly, breach of fiduciary duty, violations of Judiciary Law § 487[3] by defendant Sabol, unjust enrichment, and civil conspiracy. (Compl. ¶¶ 74-133). Plaintiff seeks compensatory and punitive damages.

## II. Venue

### A. Legal Standards

Under 28 U.S.C. § 1391(b), a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). This venue statute is applicable to "all civil actions brought in district courts of the United States," "except as otherwise provided by law." *Id.* § 1391(a).

If an action is filed in a federal district court in which venue is improper, the court shall dismiss, or, "if it be in the interest of justice, transfer such case to any

[3] The court assumes that plaintiff is referring to New York Judiciary Law § 487, which governs misconduct of attorneys in New York State. Defendant Sobal appears to be an attorney, admitted to practice in Ohio. There is no indication that she practices in New York State. In any event, her conduct clearly occurred in Ohio.

district or division in which it could have been brought." *Rolle v. Berkowitz*, No. 03 Civ.7120, 2004 WL 287678, at *2 (S.D.N.Y. Feb. 11, 2004) (citing 28 U.S.C. § 1406 (a). The Court has broad discretion to dismiss rather than transfer a case where a transfer would not be in the interest of justice. *Id.* (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("Whether dismissal or transfer is appropriate lies within the sound discretion of the district court.")).

**B. Application**

Plaintiff has brought this case as a diversity action, and she states in her complaint that venue is proper in the Northern District of New York because "the Plaintiff resides in this Judicial District and the damages accrued in this Judicial District." (Compl. ¶ 3). However, neither plaintiff's current residence, nor her "damages" are relevant to for venue purposes. Most of the defendants in this case reside in Ohio, and to the extent that plaintiff is suing companies and/or banks, those defendants are from Boston (Santander); Illinois (Pekin Insurance); and Texas (Eppi Card, Inc.) As stated above, defendant Daniel Ellis is an individual, who plaintiff lists as residing in North Carolina. The defendants have no apparent connection to the Northern District of New York.

In addition, although plaintiff states that her "damages" are in the Northern District of New York, all the defendants' conduct and the alleged conversion took place in Ohio.[4] Plaintiff's divorce proceeding was in Ohio, and defendant Sabol's conduct

[4] This is true even of the corporate defendants. Even though Eppi Card (Texas); Pekin Insurance (Illinois); Informatica (California); and Santander USA (Massachusetts). While these defendants may have principal places of business in states other than Ohio, their alleged "conduct" involved transactions in Ohio.

relative to plaintiff's divorce proceeding occurred in Ohio. Plaintiff's apartment, her personal property, her bank accounts, and everything that she claims the defendants took or refused to return to her, are in Ohio. Thus, for purposes of the venue statute, venue is appropriate in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. That venue is the Southern District of Ohio (Pataskala, Columbus, Lewis Center, and Worthington). Witnesses, documents (to the extent that they are not electronic), and any other evidence will be located in the Southern District of Ohio. There is no statutory basis for laying venue in the Northern District of New York.

Thus, venue is not proper in the Northern District of New York. This court must now determine whether to recommend dismissing this action or whether to transfer the action to the Southern District of Ohio. The court has the discretion to transfer. 28 U.S.C. § 1406(a). Although the court could recommend dismissal in such a situation so that the plaintiff could choose the proper venue in which to bring the action, the pro se plaintiff has paid the filing fee, and sua sponte ***dismissal*** should only be used in extraordinary circumstances. *See Wenegieme v. Bayview Loan Servicing*, No. 14 Civ. 9137, 2015 WL 2151822, at *4 (S.D.N.Y. May 7, 2015) (in extraordinary circumstances, the district court may dismiss a case sua sponte when venue is improper). Dismissal of the action would forfeit the filing fee, and plaintiff would have to pay another fee in a new court. The court has the power to transfer sua sponte if venue is proper under 28 U.S.C. § 1404(a) and under § 1406(a) if venue is improper.

*See Bank of America, N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013). Thus, this court finds that it would be in the interests of justice to transfer this case to the Southern District of Ohio, where the case "could have been brought." 28 U.S.C. § 1406(a). Even though a transfer is generally non-dispositive, this court will issue a Report-Recommendation so that plaintiff will have the opportunity to object.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that this case be transferred sua sponte to the Southern District of Ohio pursuant to 28 U.S.C. § 1406(a) for improper venue, and it is

**ORDERED**, that all **DEADLINES ARE SUSPENDED** until the District Court rules on this Recommendation.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 21, 2017

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**